# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

MONIQUE M.,[1]     )
          )
    Plaintiff,   )
          )  **CIVIL ACTION**
v.         )
          )  **No. 19-1345-JWL**
ANDREW M. SAUL,   )
**Commissioner of Social Security,** )
          )
    Defendant.  )
          )

## MEMORANDUM AND ORDER

Plaintiff seeks review of a decision of the Commissioner of Social Security denying Disability Insurance Benefits (DIB) and Supplemental Security Income (SSI) benefits pursuant to sections 216(i), 223, 1602, and 1614 of the Social Security Act, 42 U.S.C. §§ 416(i), 423, 1381a, and 1382c (hereinafter the Act).  Finding no reversible error in the Administrative Law Judge's (ALJ) consideration of the evidence related to Plaintiff's migraine headaches the court ORDERS that judgment shall be entered pursuant to the fourth sentence of 42 U.S.C. § 405(g) AFFIRMING the Commissioner's final decision.

## I. Background

---

[1] The court makes all its "Memorandum and Order[s]" available online.  Therefore, in the interest of protecting the privacy interests of Social Security disability claimants, it has determined to caption such opinions using only the initial of the Plaintiff's last name.

Plaintiff filed applications for SSI and DIB on April 27, 2017.  (R. 10, 216, 218).

After exhausting administrative remedies before the Social Security Administration

(SSA), Plaintiff filed this case seeking judicial review of the Commissioner's decision

pursuant to 42 U.S.C. § 405(g).  Plaintiff claims the ALJ erred in evaluating the opinion

of her medical source, Dr. Schultz, and in not discussing her testimony of migraines.

The court's review is guided by the Act.  Wall v. Astrue, 561 F.3d 1048, 1052

(10th Cir. 2009).  Section 405(g) of the Act provides that in judicial review "[t]he

findings of the Commissioner as to any fact, if supported by substantial evidence, shall be

conclusive."  42 U.S.C. § 405(g).  The court must determine whether the ALJ's factual

findings are supported by substantial evidence in the record and whether he applied the

correct legal standard.  Lax v. Astrue, 489 F.3d 1080, 1084 (10th Cir. 2007); accord,

White v. Barnhart, 287 F.3d 903, 905 (10th Cir. 2001).  "Substantial evidence" refers to

the weight, not the amount, of the evidence.  It requires more than a scintilla, but less

than a preponderance; it is "such relevant evidence as a reasonable mind might accept as

adequate to support a conclusion."  Richardson v. Perales, 402 U.S. 389, 401 (1971); see

also, Wall, 561 F.3d at 1052; Gossett v. Bowen, 862 F.2d 802, 804 (10th Cir. 1988).

Consequently, to overturn an agency's finding of fact the court "must find that the

evidence not only supports [a contrary] conclusion, but compels it."  I.N.S. v. Elias-

Zacarias, 502 U.S. 478, 481, n.1 (1992) (emphases in original).

The court may "neither reweigh the evidence nor substitute [its] judgment for that

of the agency."  Bowman v. Astrue, 511 F.3d 1270, 1272 (10th Cir. 2008) (quoting

Casias v. Sec'y of Health & Human Servs., 933 F.2d 799, 800 (10th Cir. 1991)); accord,

Hackett v. Barnhart, 395 F.3d 1168, 1172 (10th Cir. 2005); see also, Bowling v. Shalala, 36 F.3d 431, 434 (5th Cir. 1994) (The court "may not reweigh the evidence in the record, nor try the issues de novo, nor substitute [the Court's] judgment for the [Commissioner's], even if the evidence preponderates against the [Commissioner's] decision.") (quoting Harrell v. Bowen, 862 F.2d 471, 475 (5th Cir. 1988)).  Nonetheless, the determination whether substantial evidence supports the Commissioner's decision is not simply a quantitative exercise, for evidence is not substantial if it is overwhelmed by other evidence or if it constitutes mere conclusion.  Gossett, 862 F.2d at 804-05; Ray v. Bowen, 865 F.2d 222, 224 (10th Cir. 1989).

The Commissioner uses the familiar five-step sequential process to evaluate a claim for disability.  20 C.F.R. §§ 404.1520, 416.920; Wilson v. Astrue, 602 F.3d 1136, 1139 (10th Cir. 2010) (citing Williams v. Bowen, 844 F.2d 748, 750 (10th Cir. 1988)). "If a determination can be made at any of the steps that a claimant is or is not disabled, evaluation under a subsequent step is not necessary."  Wilson, 602 F.3d at 1139 (quoting Lax, 489 F.3d at 1084).  In the first three steps, the Commissioner determines whether claimant has engaged in substantial gainful activity since the alleged onset, whether she has a severe impairment(s), and whether the severity of her impairment(s) meets or equals the severity of any impairment in the Listing of Impairments (20 C.F.R., Pt. 404, Subpt. P, App. 1).  Williams, 844 F.2d at 750-51.  After evaluating step three, the Commissioner assesses claimant's residual functional capacity (RFC).  20 C.F.R. §§ 404.1520(e), 416.920(e).  This assessment is used at both step four and step five of the sequential evaluation process.  Id.

The Commissioner next evaluates steps four and five of the process—determining at step four whether, considering the RFC assessed, claimant can perform her past relevant work; and at step five whether, when also considering the vocational factors of age, education, and work experience, she is able to perform other work in the economy. Wilson, 602 F.3d at 1139 (quoting Lax, 489 F.3d at 1084).  In steps one through four the burden is on Plaintiff to prove a disability that prevents performance of past relevant work.  Blea v. Barnhart, 466 F.3d 903, 907 (10th Cir. 2006); accord, Dikeman v. Halter, 245 F.3d 1182, 1184 (10th Cir. 2001); Williams, 844 F.2d at 751 n.2.  At step five, the burden shifts to the Commissioner to show that there are jobs in the economy which are within the RFC previously assessed.  Id.; Haddock v. Apfel, 196 F.3d 1084, 1088 (10th Cir. 1999).  The court addresses each issue, beginning with the evaluation of Dr. Schultz's opinion.

## II.    Evaluation of Medical Opinions and Prior Administrative Medical Findings

Plaintiff claims the ALJ improperly evaluated Dr. Schultz's opinion.  Specifically, she argues that although the ALJ found Dr. Schultz's opinion somewhat persuasive and explained his agreement with certain limitations and his disagreement with others, Dr. Schultz's opinion included other "limitations in absenteeism, off-task behavior, and unscheduled breaks."  (Pl. Br. 20).  She argues, "The ALJ's failure to clarify how he credited or discredited the opinion was in error and failed to explain how the ALJ assessed the intensity, frequency, and duration of [Plaintiff's] migraine headaches."  Id. She argues that the ALJ was required to explain ambiguities and material inconsistencies in the evidence, to explain why he did not adopt an opinion which conflicts with the RFC

assessed, and may not pick and choose through an uncontradicted opinion.  (Pl. Br. 20-21).

The Commissioner points out that a new set of regulations applies to evaluating medical opinions and prior administrative medical findings for cases filed after March 17, 2017 as was the Social Security case here.  (Comm'r Br. 13-19).  He argues the ALJ applied the new regulations and found the administrative medical findings of the state agency physicians, Dr. Spence and Dr. Hunter, "overall, somewhat persuasive."  Id. at 19 (quoting R. 18).  He noted the ALJ agreed with the environmental limitations opined by Dr. Spence and Dr. Hunter.  Id.  The Commissioner also noted the ALJ found the medical opinions of Dr. Schultz somewhat persuasive.  Id. at 20 (citing R. 18).  The Commissioner argues the ALJ's decision is supported by the state agency physicians' opinion which accounted for Plaintiff's migraines by providing environmental limitations and that the ALJ is not required to discuss every piece of evidence in the record.  Id. at 21.  He argues to the extent the ALJ "did not discuss particular limitations identified by Dr. Schultz regarding the frequency of her headaches, likely absenteeism, need for breaks, and difficulty staying on task, it can be inferred that he found those portions of Dr. Schultz's opinion unpersuasive because they were not supported or consistent with the evidence."  Id. at 22.

In her Reply Brief, Plaintiff states that she never argued in her Brief that the old regulations regarding evaluation of medical opinions apply in this case.  (Reply 4).  She reiterates her argument that although an ALJ is not required to discuss every piece of evidence he must explain why he did not adopt an opinion which conflicts with the RFC

assessed.  Id. at 5.  Finally, she argues that the ALJ did not err in considering the opinions

of Dr. Spence and Dr. Hunter, but his "reliance on those opinions did not alleviate his

duty to consider and discuss limitations in the ability to attend work due to migraines" as

Dr. Schultz opined.  (Reply 5-6).

### A.  Standard for Evaluating Medical Opinions and Prior Administrative Medical Findings

As the Commissioner points out, effective March 27, 2017, new regulations

regarding evaluation of medical opinions and prior administrative medical findings

became effective.  Revisions to Rules Regarding the Evaluation of Medical Evidence, 82

Fed. Reg. 5,844-01, 2017 WL 168819 (SSA Jan. 18, 2017)  In the new regulations, the

Commissioner found that certain evidence including decisions by other governmental

agencies and nongovernmental entities, disability examiner findings, and statements on

issues reserved to the Commissioner "is inherently neither valuable nor persuasive to the

issue of whether you are disabled or blind under the Act, [and the SSA] will not provide

any analysis about how we considered such evidence in our determination or decision."

20 C.F.R. §§ 404.1520b(c), 416.920b(c) (2017).

In the new regulations, the Commissioner explicitly delineated five categories of

evidence including objective medical evidence, medical opinion, other medical evidence,

evidence from nonmedical sources, and prior administrative medical findings.  20 C.F.R.

§§ 404.1513, 416.913 (2017).  The regulations define objective medical evidence as

"medical signs, laboratory findings, or both."  20 C.F.R. §§ 404.1513(a)(1),

416.913(a)(1) (2017).  "Other medical evidence is evidence from a medical source that is

not objective medical evidence or a medical opinion, including judgments about the nature and severity of your impairments, your medical history, clinical findings, diagnosis, treatment prescribed with response, or prognosis." 20 C.F.R. §§ 404.1513(a)(3), 416.913(a)(3) (2017).  "Evidence from nonmedical sources is any information or statement(s) from a nonmedical source (including you) about any issue in your claim." 20 C.F.R. §§ 404.1513(a)(4), 416.913(a)(4) (2017).

The regulation defines "medical opinion" and "prior administrative medical finding:"

> (2) Medical opinion.  A medical opinion is a statement from a medical source about what you can still do despite your impairment(s) and whether you have one or more impairment-related limitations or restrictions in the following abilities: …

>> (i) Your ability to perform physical demands of work activities, such as sitting, standing, walking, lifting, carrying, pushing, pulling, or other physical functions (including manipulative or postural functions, such as reaching, handling, stooping, or crouching);

>> (ii) Your ability to perform mental demands of work activities, such as understanding; remembering; maintaining concentration, persistence, or pace; carrying out instructions; or responding appropriately to supervision, co-workers, or work pressures in a work setting;

>> (iii) Your ability to perform other demands of work, such as seeing, hearing, or using other senses; and

>> (iv) Your ability to adapt to environmental conditions, such as temperature extremes or fumes.

> ***

> (5) Prior administrative medical finding.  A prior administrative medical finding is a finding, other than the ultimate determination about whether you are disabled, about a medical issue made by our Federal and State agency medical and psychological consultants at a prior level of review (see

§ 404.900) in your current claim based on their review of the evidence in your case record, such as:

> (i) The existence and severity of your impairment(s);

> (ii) The existence and severity of your symptoms;

> (iii) Statements about whether your impairment(s) meets or medically equals any listing in the Listing of Impairments in Part 404, Subpart P, Appendix 1;

> (iv) Your residual functional capacity;

> (v) Whether your impairment(s) meets the duration requirement; and

> (vi) How failure to follow prescribed treatment (see § 404.1530) and drug addiction and alcoholism (see § 404.1535) relate to your claim.

20 C.F.R. § 404.1513(a)(4) (2017) (§ 416.913(a)(4) is to an identical effect for adult SSI claims).

The regulations include a new section entitled "How we consider and articulate medical opinions and prior administrative medical findings for claims filed on or after March 27, 2017." 20 C.F.R. §§ 404.1520c, 416.920c (2017). The SSA explained:

> To account for the changes in the way healthcare is currently delivered, we are adopting rules that focus more on the content of medical opinions and less on weighing treating relationships against each other. This approach is more consistent with current healthcare practice.

Revisions to Rules Regarding the Evaluation of Medical Evidence, 82 Fed. Reg. 5,844-01, 5,854, 2017 WL 168819 (SSA Jan. 18, 2017) (emphasis added). The regulation provides that the Commissioner "will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s), including those from your medical sources." 20 C.F.R. §§ 404.1520c(a), 416.920c(a) (2017) (emphasis added). The regulation provides that the SSA will

consider each medical source's opinions using five factors, supportability, consistency,

relationship of source to claimant, specialization, and other factors tending to support or

contradict a medical opinion or prior administrative medical finding.  20 C.F.R.

§§ 404.1520c(a)(c)(1-5), 416.920c(a)(c)(1-5)  (2017).

The regulation explains that a decision will <u>articulate how persuasive</u> the SSA

finds all medical opinions and prior administrative medical findings.  20 C.F.R.

§§ 404.1520c(b), 416.920(c)(b) (2017).  The articulation requirement applies for each

source, but not for each opinion of that source separately.  20 C.F.R. §§ 404.1520c(b)(1),

416.920c(b)(1) (2017).  It provides that the most important factors in evaluating

persuasiveness are supportability and consistency.  20 C.F.R. §§ 404.1520c(b)(2),

416.920c(b)(2) (2017).  It requires that the SSA

> will explain how we considered the supportability and consistency factors
> for a medical source's medical opinions or prior administrative medical
> findings in your determination or decision.  We may, but are not required
> to, explain how we considered the factors in paragraphs (c)(3) through
> (c)(5) of this section, as appropriate, when we articulate how we consider
> medical opinions and prior administrative medical findings in your case
> record.

20 C.F.R. §§ 404.1520c(b)(2), 416.920c(b)(2) (2017).  The regulation explains that when

the decision-maker finds two or more medical opinions or prior administrative medical

findings are equal in supportability and consistency "but are not exactly the same," the

decision will articulate the other most persuasive factors from paragraphs (c)(3) through

(c)(5).  20 C.F.R. §§ 404.1520c(b)(3), 416.920c(b)(3) (2017).  Finally, the regulation

explains that the SSA is not required to articulate how it considered evidence from non-

medical sources.  20 C.F.R. §§ 404.1520c(d), 416.920c(d) (2017).

9

Finally, as Plaintiff suggests, an ALJ is required to explain ambiguities and material inconsistencies in the evidence and to explain why he did not adopt a medical opinion which conflicts with the RFC assessed.  Social Security Ruling (SSR) 96-8p, West's Soc. Sec. Reporting Serv., Rulings 148-49 (Supp. 2019).  Moreover, the Tenth Circuit has held that an ALJ may not pick and choose among or within the medical opinions in a case record, using the portions favorable to his decision while ignoring other, unfavorable, portions.  Haga v. Astrue, 482 F.3d 1205, 1208 (10th Cir. 2007) ("An ALJ is not entitled to pick and choose through an uncontradicted medical opinion, taking only the parts that are favorable to a finding of nondisability."); Robinson v. Barnhart, 366 F.3d 1078, 1083 (10th Cir. 2004) ("The ALJ is not entitled to pick and choose from a medical opinion, using only those parts that are favorable to a finding of nondisability.").

## B.    The ALJ's Findings

The ALJ found that Plaintiff's migraines are severe within the meaning of the Act at step two of the sequential evaluation process.  (R. 12).  He assessed Plaintiff with the RFC to perform a range of sedentary work.  (R. 14).  He further limited her RFC as relevant here:  to never climb ladders, ropes, or scaffolds and to

> work environments with no more than a "moderate" noise intensity level, with the Selected Characteristics of Occupations defining that term with examples including light traffic, a grocery store, or a department store.  The claimant must avoid all exposure to vibration.  The claimant must [avoid] respiratory irritants such as fumes odors dust gases and poorly ventilated areas.  Further, she must avoid all exposure to unprotected heights moving mechanical parts and other workplace hazards.  The claimant is restricted to the performance of simple and repetitive tasks with few changes in workplace setting.

(R. 15) (finding no. 5, bold omitted, punctuation as in original).

The ALJ noted the medical record regarding physical impairments was "rather limited," but that Plaintiff "has a history of migraine headaches … despite following prescribed treatment." (R. 16) (citing Ex. 5F/4-6 (R. 410-12). He cited treatment records from February and May 2017, and from January and May 2018, in which Plaintiff reported headaches or migraines. (R. 16-17) (citing Exs.5F/1, 2, 4, 5; 15F/3, 4, 7, 8 (R. 407-08, 410-11, 462-65, 468-69). He noted the record documents Plaintiff's continuing migraines but concluded, "the claimant's complete treatment records do not document the limitations she subjectively alleges or otherwise establish functional limitations that would preclude the range of sedentary exertion established in the residual functional capacity, above." Id. at 17 (punctuation in original).

The ALJ explained that the agency "will not defer or give any specific evidentiary weight, including controlling weight, to any prior administrative medical finding(s) or medical opinion(s), including those from your medical sources." Id. at 18. He explained how he considered the medical opinions of Dr. Schultz and the prior administrative medical findings of Dr. Spence and Dr. Hunter:

> The undersigned considered the opinions of State agency medical consultants Paul Spence, M.D. (Exhibit 1A; 2A) and Jan Hunter, D.O. (Exhibit 7A; 8A), and finds them, overall, somewhat persuasive. Both Dr. Spence and Dr. Hunter opine the claimant is capable of work at the light exertional level with no postural limitations. As discussed above, the record shows the claimant consistently reported pain associated with hemorrhoids and plantar fasciitis that warrant reduced stand and walking limitations. Additionally, postural limitations are warranted due to pain associated with her severe impairments. As discussed above, further physical limitations are consistent with the claimant's treatment and supported by the record. Environmental limitations are warranted due to the claimant's consistently reported migraines as discussed above. Therefore, these opinions are, overall, found somewhat persuasive.

11

\*\*\*

The undersigned also considered the opinions of Drew Shultz,[2] D.O. (Exhibit 4F; 6F; 11F; 12F; 14F), and finds them somewhat persuasive. Dr. Shultz opined the claimant is capable of lifting up to 20 pounds constantly with only balancing reduced to occasional. (Exhibit 4F/2) However, he also opined the claimant could lift a maximum of 10 pounds. (Exhibit 6F/1; duplicate 12F/2) Due to the claimant's constant pain and plantar fasciitis, she would be further limited in her ability to lift and/or carry and perform postural activities. However, Dr. Shultz's opinion regarding the claimant's ability to sit six hours in an eight-hour workday and stand for two hours in an eight-hour workday is consistent with the above discussed record and supported by the evidence. (Exhibit 4F/2; 14F/5, 6) Where these opinions are consistent with his examinations and supported by the of the [sic] evidence, the undersigned finds them persuasive.

(R. 18-19).

## C.   Analysis

The court finds no error in the ALJ's consideration of the medical opinions and prior administrative medical findings. Plaintiff is correct that she did not argue the old regulations apply in this case. However, the new regulations govern consideration of the medical opinions and prior administrative medical findings in this case and those regulations involve substantial changes in the consideration of such evidence. Because the regulations change the way such evidence is considered, they also affect the precedential value of case law regarding consideration of such evidence. Therefore, it is appropriate for the Commissioner and the court to extensively address the changes.

In the Final Rule adopting the new regulations, the SSA stated that under the prior regulations, courts

---

[2] The decision consistently misspells Dr. Schultz's name.  Compare, e.g. (R. 403, 461).

12

focused more on whether [the agency] sufficiently articulated the weight [it] gave treating source opinions, rather than on whether substantial evidence supports [the] final decision. As the Administrative Conference of the United States' (ACUS) Final Report explains, these courts, in reviewing final agency decisions, are reweighing evidence instead of applying the substantial evidence standard of review, which is intended to be [a] highly deferential standard to us.

Revisions to Rules Regarding the Evaluation of Medical Evidence, 82 Fed. Reg. 5,844-01, 5,853, 2017 WL 168819 (SSA Jan. 18, 2017).  Therefore, the SSA has rejected determining relative weights of opinion evidence in favor of assessing the persuasiveness of a source's opinions or of a source's administrative medical findings.  Consequently, while a court must still determine whether the ALJ's factual findings are supported by substantial evidence in the record and whether he applied the correct legal standard, that legal standard is not a hierarchical evaluation of various medical sources under the treating physician rule, but it is whether the ALJ properly applied the regulations to determine the persuasiveness of the evidence based primarily on the supportability and consistency factors as applied to that evidence.  If he has done so, the question remaining is whether substantial evidence in the record (such relevant evidence as a reasonable mind might accept as adequate to support a conclusion) supports the ALJ's decision.

Here, Plaintiff does not argue error in the ALJ's determination that Dr. Schultz's medical opinions were somewhat persuasive or in his determination that the prior administrative medical findings of Dr. Spence and Dr. Hunter were somewhat persuasive. In fact, she accepts these findings, but argues the prior administrative medical findings do "not address the intensity, frequency, and duration of migraines" (Pl. Br. 19), and Dr. Schultz's opinions "included additional significant limitations that the ALJ failed to

13

address." Id. at 19-20.  Plaintiff first cites Clifton v. Chater, 79 F.3d 1007, 1010 (10th Cir. 1992) for the proposition that the ALJ was required to discuss significant probative evidence he rejects, and Keyes-Zachary v. Astrue, 695 F.3d 1156, 1167 (10th Cir. 2012) for the proposition that although no formalistic factor-by-factor evaluation is necessary, an ALJ must set forth specific evidence he relies upon in evaluating Plaintiff's credibility. To the extent these citations address the ALJ's consideration of Plaintiff's allegations of symptoms, that issue is addressed later in this decision.  However, Plaintiff does not point to significantly probative evidence regarding migraines in Dr. Schultz's opinion or in the prior administrative medical findings of Dr. Spence and Dr. Hunter which the ALJ rejected.  The court's review of Dr. Schultz's opinions reveal that he opined Plaintiff has migraines two to three times a week that "abort[] with meds that make her sleepy,"  (R. 401, 442).  But as will be more fully addressed later, the ALJ accepted rather than rejected this evidence.  Moreover, as Plaintiff admits, the ALJ stated the evidence he relied upon in accepting or rejecting certain medical opinions and prior administrative medical findings.

Plaintiff then cites Haga v. Astrue, 482 F.3d 1205, 1208 (10th Cir. 2007); Wilson v. Colvin, 541 Fed. App'x. 869, 873-74 (10th Cir. 2013); Sitsler v. Barnhart, 182 Fed. App'x. 819, 823 (10th Cir. 2006); and Thomas v. Astrue, No. 11-1001-SAC, 2012 WL 235576, at *3 (D. Kan. Jan. 25, 2012); for the proposition that when an ALJ accepts some limitations opined by a medical source, he must explain his reasons for rejecting any (every?) other limitation opined by that medical source.  The court finds each of the cases cited by Plaintiff is inapposite.

In <u>Haga</u>, the only case cited which is precedent binding this court, a medical expert, Dr. Rawlings, testified at the ALJ hearing that the plaintiff in that case may be unemployable but "he would like to do more testing before drawing a conclusion about her restrictions."  <u>Haga</u>, 482 F.3d at 1207.  After testing was complete, the expert completed a mental RFC form finding the plaintiff moderately limited in seven of ten mental functional abilities.  <u>Id.</u>  The ALJ assessed limitations consistent with three of the expert's moderate limitations but not the other four, and the plaintiff argued the expert's mental RFC assessment was uncontroverted and, in accordance with <u>Clifton</u>, the ALJ should have discussed the four moderate limitations he did not assess as either "uncontroverted evidence he cho[se] not to rely upon, [or] as significantly probative evidence he reject[ed]."  <u>Id.</u> (quoting <u>Cifton</u> 79 F.3d at 1009-10).  After examining the parties' arguments, the evidence, and the ALJ's decision, the court stated its conclusion,

> We therefore agree that the ALJ should have explained why he rejected four of the moderate restrictions on Dr. Rawlings' RFC assessment while appearing to adopt the others.  An ALJ is not entitled to pick and choose through an uncontradicted medical opinion, taking only the parts that are favorable to a finding of nondisability.

<u>Haga</u>, 482 F.3d at 1208.

The court finds two factors which distinguish this case from <u>Haga</u>.  First, in this case, Dr. Schultz's opinion regarding Plaintiff's migraines did not stand alone.  Dr. Spence and Dr. Hunter provided opinions in their prior administrative medical findings which also illuminated the ALJ's evaluation of Plaintiff's migraines, and he specifically commented on their opinions.  Second, and most importantly, the court finds the ALJ rejected no portion of Dr. Schultz's opinion regarding Plaintiff's migraines.  As noted

above, Dr. Schultz opined Plaintiff has migraines two to three times a week that "abort[]
with meds that make her sleepy." (R. 401, 442). As also noted, the ALJ found Plaintiff
must never climb ladders, ropes, or scaffolds, must have a work environment with no
more than moderate noise, must avoid all exposure to vibration, must avoid respiratory
irritants, must avoid all exposure to workplace hazards, and is restricted to simple and
repetitive tasks with few changes. (R. 15). Plaintiff has not shown that Dr. Schultz's
opinion (migraines two to three times a week which abort with meds, but the meds make
Plaintiff sleepy) compels finding an RFC with greater limitations than assessed. The ALJ
assessed environmental limitations to eliminate or reduce triggers for Plaintiff's
migraines as Dr. Spence and Dr. Hunter suggested, and he assessed a need to avoid
hazards and a limitation to simple and repetitive tasks which at least partially
accommodate a worker which is not fully alert because of sleepiness. Moreover, Dr.
Schultz did not opine that Plaintiff will fall asleep after taking her migraine meds, and the
regulations do not require that an individual be symptom-free in order to work. The
record does not compel a finding that Plaintiff must stop work because of sleepiness after
she takes meds which abort her migraines.

Moving to Wilson the court agreed

that the ALJ's RFC, as stated in the decision, is not generally consistent
with Dr. LaGrand's medical opinion, and the ALJ's failure to weigh that
opinion and explain why he accepted some, but not all, of its moderate
restrictions, was not harmless error. We reverse and remand to the ALJ for
further consideration of Dr. LaGrand's opinion. If the ALJ intended to
omit from Ms. Wilson's RFC the doctor's moderate restrictions regarding
her ability to adapt to a usual work setting and any changes in it, the ALJ
should explain his reasons for doing so, as well as the weight he assigns to
the opinion. If the ALJ intended to adopt these moderate restrictions from

> Dr. LaGrand's opinion, he should revise Ms. Wilson's RFC to include them.

Wilson, 541 Fed. App'x at 873-74. (citations omitted). The decision in Wilson depends upon the requirements to weigh the opinion and explain the basis of the weight accorded pursuant to the treating physician's rule under the regulations applicable to claims filed before March 17, 2017. Pursuant to the new regulations applicable in this case, an ALJ is required to explain how persuasive he finds a physician's opinions as a whole, but there is no requirement to assess or explain the weight accorded to each individual opinion. Thus, the Wilson opinion is inapposite. Moreover, as quoted above, the court in Wilson found the RFC was inconsistent with Dr. LeGrand's opinion whereas this court finds the RFC assessed here is not inconsistent with Dr. Schultz's opinion regarding migraines.

Both Sitsler and Thomas specifically rely upon the requirement in SSR 96-8p that, "If the RFC assessment conflicts with an opinion from a medical source, the adjudicator must explain why the opinion was not adopted." Sitsler, 182 Fed. App'x at 823 (quoting SSR 96-8p, 1996 WL 374184, at *7); Thomas, 2012 WL 235576 at *3 (quoting SSR 96-8p, 1996 WL 374184, at *7). This court finds the RFC assessed here does not conflict with Dr. Schultz's opinion regarding migraines. Moreover, Sitsler and Thomas both rely upon 20 C.F.R. § 404.1527, which is the regulation regarding the treating physician rule applicable to claims filed before March 17, 2017, and upon SSR 96-5p, which was rescinded when the new regulations became effective. 182 Fed. App'x at 823; 2012 WL 235576 at *4; Revisions to Rules Regarding the Evaluation of Medical Evidence, 82 Fed. Reg. 5,844-01, 5,845, 2017 WL 168819 (SSA Jan. 18, 2017).

Plaintiff's argument that the ALJ was required to explain ambiguities and material inconsistencies in the evidence also fails as it relates to Dr. Schultz's medical opinion. Because, as explained above, there is no conflict between the RFC assessed and Dr. Schultz's medical opinion, there is also no ambiguity or material inconsistency. Plaintiff cannot create an ambiguity or inconsistency merely because her view of the evidence differs from that of the ALJ, she must show that the evidence compels finding such an ambiguity or inconsistency. "The possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's findings from being supported by substantial evidence. We may not displace the agency's choice between two fairly conflicting views, even though the court would justifiably have made a different choice had the matter been before it de novo." Lax, 489 F.3d at 1084 (citations, quotations, and bracket omitted); see also, Consolo v. Fed. Maritime Comm'n, 383 U.S. 607, 620 (1966).

## III.   Evaluation of Plaintiff's Allegations of Symptoms

Plaintiff claims the ALJ violated "SSR 16-3p because he did not explain why he discounted [Plaintiff]'s allegations of the frequency, intensity, and duration of migraines." (Pl. Brief 14). She argues, "The ALJ summarized some of [Plaintiff]'s testimony but failed to acknowledge any of her statements regarding migraines." Id. She acknowledges that the ALJ found her allegations of symptoms "not entirely consistent with the medical evidence and other evidence in the record for the reasons explained in the" ALJ's decision (R. 16), but argues the ALJ's findings do not meet the rulings' requirement to "contain specific reasons for the weight given to the individual's

symptoms, be consistent with and supported by the evidence, and be clearly articulated." (Pl. Brief 16) (quoting SSR 16-3p, 2016 WL 1119029, * 9).  She argues, "The ALJ's conclusory findings related to migraines in the RFC assessment failed to address the frequency, intensity, and duration of [Plaintiff]'s migraine headaches." Id. at 17 (citing Otte v. Berryhill, No. 18-2006-JWL, 2018 WL 5263515, at *4-5 (D. Kan. Oct. 23, 2018). She argues the ALJ did not "explain which of the individual's statements [h]e found consistent or inconsistent with the evidence in [Plaintiff's] record and how [his] evaluation of the individual's symptoms led to [his] conclusions." Id. (quoting SSR 16-03p, 2016 WL 1119029, *9).  She argues none of the reasons given by the ALJ to discount Plaintiff's allegations of symptoms relate specifically to her allegations regarding the intensity, duration, or frequency of migraines and are, therefore, insufficient to discount those allegations. Id. at 18.  Finally, she explains how, in her view, the record evidence is consistent with her allegations of the intensity, duration, and frequency of migraines. Id. at 18-19.

The Commissioner argues the ALJ reasonably discounted Plaintiff's allegations of symptoms. (Comm'r Br. 8).  He argues that common sense, not technical perfection, is the guide and an ALJ's credibility "analysis is sufficient so long as the ALJ 'sets forth the specific evidence he relies on in evaluating the claimant's credibility.'" Id. at 9-10 (quoting Keyes-Zachary, 695 F.3d at 1167-68).  He argues the ALJ need not summarize each of Plaintiff's allegations regarding migraine symptoms, because he is not required to discuss every piece of evidence. Id. at 10.  He argues the ALJ's discussion was sufficient to show his reasoning, and he assessed RFC limitations to account for Plaintiff's

migraines.  (Comm'r Br. 11).  He argues the reasons given by the ALJ to discount

Plaintiff's allegation of symptoms is adequate.  Id. at 11-12.

In her Reply Brief, Plaintiff argues that, contrary to the Commissioner's assertion,

the decision does not make clear the ALJ rejected or even considered Plaintiff's

testimony of the intensity, duration, or frequency of her migraines.  (Reply 3).  Finally,

she argues that the ALJ's inclusion of limitations to reduce triggers of her migraines

"does not speak to [her] limitations when experiencing a migraine."  Id. at 4.

### A.      Standard for Evaluating a Claimant's Allegation of Symptoms

The Tenth Circuit has explained the analysis for considering subjective allegations

regarding symptoms.  Thompson v. Sullivan, 987 F.2d 1482, 1488 (10th Cir. 1993)

(dealing specifically with pain).

> A claimant's subjective allegation of pain is not sufficient in itself to
> establish disability.  Before the ALJ need even consider any subjective
> evidence of pain, the claimant must first prove by objective medical
> evidence the existence of a pain-producing impairment that could
> reasonably be expected to produce the alleged disabling pain.  This court
> has stated:  The framework for the proper analysis of Claimant's evidence
> of pain is set out in Luna v. Bowen, 834 F.2d 161 (10th Cir. 1987).  We
> must consider (1) whether Claimant established a pain-producing
> impairment by objective medical evidence; (2) if so, whether there is a
> "loose nexus" between the proven impairment and the Claimant's
> subjective allegations of pain; and (3) if so, whether, considering all the
> evidence, both objective and subjective, Claimant's pain is in fact
> disabling.

Thompson, 987 F.2d at 1488 (citations and quotation omitted).

In evaluating a claimant's allegations of symptoms, the court has recognized a non-exhaustive list of factors which should be considered. Luna, 834 F.2d at 165-66; see also 20 C.F.R. §§ 404.1529(c)(3), 416.929(c)(3). These factors include:

> the levels of medication and their effectiveness, the extensiveness of the attempts (medical or nonmedical) to obtain relief, the frequency of medical contacts, the nature of daily activities, subjective measures of credibility that are peculiarly within the judgment of the ALJ, the motivation of and relationship between the claimant and other witnesses, and the consistency or compatibility of nonmedical testimony with objective medical evidence.

Kepler v. Chater, 68 F.3d 387, 391 (10th Cir. 1995) (quoting Thompson, 987 F.2d at 1489).[3]

The Commissioner has promulgated regulations suggesting relevant factors to be considered in evaluating a claimant's allegations of symptoms which overlap and expand upon the factors stated by the court: Daily activities; location, duration, frequency, and intensity of symptoms; factors precipitating and aggravating symptoms; type, dosage, effectiveness, and side effects of medications taken to relieve symptoms; treatment for symptoms; measures plaintiff has taken to relieve symptoms; and other factors

---

[3] Luna, Thompson, and Kepler, were decided when the term used to describe the evaluation of a claimant's allegations of symptoms resulting from her impairments was "credibility determination." Although that term is no longer used, the applicable regulation never used that term and the procedure for evaluating a claimant's allegations of symptoms has not significantly changed. Revisions to Rules Regarding the Evaluation of Medical Evidence, 82 Fed. Reg. 5,844-01, 5,871, 5,882 (Jan. 18, 2017) (codified at 20 C.F.R. §§ 404.1529, 416.929). Therefore, the three-step framework set out in Luna, based on 20 C.F.R. § 404.1529, 416.929 (2017) is still the proper standard to be used as explained in the regulations in effect on November 8, 2018, when this case was decided. Nonetheless, to the extent that "subjective measures of credibility that are peculiarly within the judgment of the ALJ" relate to an examination of a claimant's character, it is specifically prohibited by SSR 16-3p, and is no longer a valid factor to be considered.

concerning limitations or restrictions resulting from symptoms.  20 C.F.R.

§§ 404.1529(c)(3)(i-vii), 416.929(c)(3)(i-vii).

### B. The ALJ's Evaluation of Plaintiff's Allegations of Symptoms

The ALJ explained the regulatory framework applicable to Plaintiff's allegation of

symptoms.  (R. 15) (citing 20 C.F.R. §§ 404.1529, 416.929; and SSR 16-3p).  He briefly

summarized Plaintiff's allegations of symptoms, id., and found her "statements

concerning the intensity, persistence and limiting effects of these symptoms are not

entirely consistent with the medical evidence and other evidence in the record for the

reasons explained in this decision."  Id. at 16.  He found the medical evidence did not

support Plaintiff's allegations of disabling limitations, the RFC assessed "adequately

addresses the location, duration, frequency, and intensity of the claimant's alleged

symptoms as well as precipitating and aggravating factors."  Id.  He found Plaintiff's

> statements about the intensity, persistence, and limiting effects of her
> symptoms, [] are not consistent with the record as a whole.  The record
> shows the claimant has been treated for, or diagnosed with, the above listed
> severe impairments [(including migraines)].  However, these impairments
> do not rise to the level of finding the claimant disabled.

Id.  The ALJ discussed Plaintiff's treatment for her migraines:

> The claimant's physical record is rather limited, but it does show the
> claimant has a history of migraine headaches and plantar fasciitis despite
> following prescribed treatment.  (Exhibit 5F/4-6 [R. 410-12.])  The
> claimant presented to a February 2017 examination with headaches and
> pain due to plantar fasciitis despite ROMS/IBU and shoe inserts.  (Exhibit
> 5F/4 [R. 410.])  The physical examination showed chronic pain, but was
> otherwise normal.  (Exhibit 5F/5 [R. 411.])  The claimant was to continue
> with stretching exercises for her plantar fasciitis and medications to treat
> her constipation.  (Exhibit 5F/4, 5 [R. 410-11.])

A May 2017 examination noted opioid induced constipation with rectal bleeding and hemorrhoids, and continued headaches. (Exhibit 5F/1 [R. 407.]) Aside from hemorrhoids and chronic migraines, the claimant's physical examination was otherwise normal. (Exhibit 5F/2 [R. 408.])

A physical examination in January 2018 noted the claimant was uncomfortable with chronic migraines from neck pain, and she had hemorrhoids and fissure. (Exhibit 15F/7 [R. 468.]) The claimant was prescribed medication for pain management. (Exhibit 15F/8 [R. 469.])

The claimant presented to a May 2018 examination with abdominal cramps and constipation, and continued headaches. (Exhibit 15F/3 [R. 464.]) The physical examination remained unchanged. (Exhibit 15F/4 [R. 465.]) She was prescribed medication for her hemorrhoids and migraines, and was to continue with her constipation medication. A follow-up examination in June 2018 shows the claimant did not respond to her anti-constipation medication and continued to have abdominal pain. (Exhibit 15F/1 [R. 462.]) The physical examination was normal other than the claimant's noted constipation. (Exhibit 15F/2 [R. 463.]) The claimant was prescribed a new treatment for her constipation.

Overall, the record does show the claimant continued to have migraine headaches and abdominal pain due to constipation and pain due to plantar fasciitis. However, the claimant's complete treatment records do not document the limitations she subjectively alleges or otherwise establish functional limitations that would preclude the range of sedentary exertion established in the residual functional capacity, above.

(R. 16-17). The ALJ concluded his RFC assessment:

In sum, the above residual functional capacity assessment is supported by the evidence as a whole and there is no medical opinion in the record supporting greater limitations than those adopted herein. The claimant's subjective complaints are not entirely consistent with the medical evidence and other evidence in the record. The undersigned finds the claimant has not been deprived of the ability to perform work subject to the residual functional capacity assessed by this decision for any 12-month period since the application date.

Id. at 19.

## C.    Analysis

23

Contrary to Plaintiff's argument that the ALJ "did not explain why he discounted [Plaintiff]'s allegations of the frequency, intensity, and duration of migraines," (Pl. Brief 14), the ALJ explained both that he found her "statements about the intensity, persistence and limiting effects of her symptoms" inconsistent with the record as a whole, (R. 16), and that the RFC assessed "adequately addresses the location, duration, frequency, and intensity of the claimant's alleged symptoms as well as precipitating and aggravating factors." Id. Plaintiff argues this is an inadequate explanation because the ALJ failed to acknowledge her statements regarding migraines, and his findings do not have specific reasons for the weight accorded her symptoms, are not consistent with and supported by the evidence, and are not clearly articulated.

An ALJ is not required to quote each of a claimant's statements about each of her impairments in order to be recognized as acknowledging them. And, in a case such as this, where the ALJ accepted Plaintiff's medical source's opinion that her migraines occurred two to three times a week and aborted with meds that made her sleepy, the need for direct acknowledgment of Plaintiff's allegations regarding these particular symptoms is even lessened. Moreover, Plaintiff's report to Dr. Schultz in February of 2017 that she has one migraine every two weeks (R. 410) is evidentiary support for the ALJ's finding her allegations of frequency are inconsistent with the medical records. Finally, considering the entirety of the ALJ's evaluation as noted above, the court finds it was clearly articulated. He summarized every treatment note wherein Plaintiff was treated for migraines, and Plaintiff points to no treatment that was ignored. (R. 16-17). Plaintiff's suggestion that the ALJ summarized treatment recommendations in his decision but "he

never addressed treatment recommendations for migraines," ignores the fact the treatment records contain one treatment recommendation ("Plan") for migraines—which adjusted Plaintiff's medication (R. 465)—and the ALJ specifically cited that recommendation.  (R. 17) ("She was prescribed medication for her hemorrhoids and migraines") (emphasis added).

Plaintiff's argument that the ALJ did not "explain which of the individual's statements [h]e found consistent or inconsistent with the evidence in [Plaintiff's] record and how [his] evaluation of the individual's symptoms led to [his] conclusions," quotes SSR 16-3p to suggest that an ALJ must address each allegation of a limitation, state whether he found that allegation consistent or inconsistent with the evidence, and explain how each statement factored into his conclusion.  The court does not find the Ruling to require such a direct consideration or explanation of a claimant's allegations.  To be sure, a record may contain evidence requiring greater analysis than that provided in an ALJ's decision, but Plaintiff does not point to such evidence or evidence that compels a different analysis or result in this case.  As noted above, although the ALJ's analysis is not pellucid or addressed statement-by-statement, he did "set[] forth the specific evidence he relie[d] on in evaluating the claimant's credibility;" Keyes-Zachary, 695 F.3d at 1167; and his reasoning as discussed herein is sufficiently clear to be followed by an individual considering the decision in context.  More is not required.

Plaintiff's appeal to this court's decision in Otte does not require a different result.  As Plaintiff suggests, the court in Otte found, "The ALJ must explain specifically why he found that Plaintiff's Ménière's disease attacks will not cause her to miss work one to

two days a month on an ongoing basis and are therefore not disabling.  He has not done

so, and he may not simply disregard Plaintiff's allegations because there are other

inconsistencies with the evidence."  2018 WL 5263515, at *5.  However, Plaintiff ignores

the specific facts upon which the court's decision in Otte was based,

> Plaintiff's statements regarding the frequency (and to an extent, the
> intensity) of her Ménière's disease attacks have varied over time, but the
> Commissioner recognizes that that does not necessarily reveal a fatal
> inconsistency in her allegations, and, in fact such variation is recognized as
> normal with Ménière's disease.

Id.  SSR 16-3p recognizes that

> Symptoms may vary in their intensity, persistence, and functional effects,
> or may worsen or improve with time.  This may explain why an
> individual's statements vary when describing the intensity, persistence, or
> functional effects of symptoms.

2016 WL 1119029 at *8.  In Otte the record showed the frequency of the plaintiff's

attacks varied over time.  Here, there is no record evidence compelling that finding.

Finally, Plaintiff's argument that the ALJ's inclusion of limitations to reduce

triggers of her migraines "does not speak to [her] limitations when experiencing a

migraine" (Reply 4) misses the significance of the RFC assessed and of Dr. Schultz's

opinion that her migraines abort with meds.  The RFC limitations on triggers are intended

to reduce the incidence of migraines during work to the minimum possible, and Dr.

Schultz's opinion that the migraines abort with meds suggests that the time involving

reduced performance will be negligible.

Plaintiff has shown no reversible error in the decision below.

**IT IS THEREFORE ORDERED** that judgment shall be entered pursuant to the fourth sentence of 42 U.S.C. § 405(g) AFFIRMING the Commissioner's final decision.

Dated September 30, 2020, at Kansas City, Kansas.

s:/  *John W. Lungstrum*
**John W. Lungstrum**
**United States District Judge**